GARRET G. ACKERSON, trustee, &c.,

*v.*

THE LODI BRANCH RAILROAD COMPANY and others.

HARRISON J. LIBBY and others

*v.*

WILLIAM RENNIE and others.

1. In a suit by an assignee to foreclose a mortgage held by him as collateral security for non-payment of interest on the bonds, the mortgagee or his assignee cannot set up that the mortgage does not provide that the principal shall become due on the non-payment of the interest, the mortgagor, who was a party, not having interposed such defence.

2. By an agreement, a judgment creditor was to accept $30,000, in installments, in payment of his judgment of $60,000, the debtor to withdraw a pending appeal on such judgment, and to pay the installments promptly, or, in default thereof, the judgment creditor might collect the full amount of the judgment ($60,000) remaining unpaid.— *Held*, that failure to pay according to the agreement could not be regarded as a forfeiture or penalty which it was inequitable for this court to enforce.

3. Where a mortgagee in possession assigns the mortgage, the mortgagor, who has no actual notice of the assignment, is entitled, as against the assignee, to an account of the rents and profits up to the time of recording the assignment (but not afterwards), and to have them applied on the mortgage debt.

4. A party defendant in a foreclosure suit cannot be held liable for a deficiency prayed against him in the bill, unless a ticket or notice to .that effect be served on him with the subpœna to answer, in compliance with *Rule 53*.

On final hearing on pleadings and proofs.

*Mr. George H. Coffey*, and *Mr. Philo. Chase* of New York, for complainants.

*Mr. W. M. Johnson*, for defendants.

THE CHANCELLOR.

These causes were heard together by consent of counsel. They are a suit for foreclosure of a mortgage given by the Lodi Branch Railroad Company, on its railroad and equipments and franchises, to Garret G. Ackerson and Cornelius L. Blauvelt, trustees (the latter is dead), to secure the payment of bonds dated July 1st, 1873, and payable July 1st, 1893, to the amount of $50,000 of principal, bearing interest payable half-yearly, all of which are held by the Messrs. Libby by assignment from Robert Rennie to them; a suit for foreclosure of a mortgage given to Robert Rennie by William Rennie, on land in Lodi township, in Bergen county, to secure the payment of his bond for $10,000, with interest, which bond and mortgage were assigned to the Messrs. Libby by Robert Rennie; and a cross-suit, in favor of William Rennie, against the Messrs. Libby, to establish and make available to him certain equities which he claims against Robert Rennie, his mortgagee, and therefore against them as assignees.

The bonds secured by both mortgages were assigned to the Messrs. Libby by Robert Rennie, under an agreement between them and him, by which they agreed to accept $30,000, if paid according to the terms of the agreement, in satisfaction of a judgment for $54,500 in their favor against him, in the superior court of the city of New York, and on which suit had, when the agreement was made, been begun in the supreme court of this state, and for the entry of judgment wherein, immediately, the agreement provided. The railroad bonds and the William Rennie bond and mortgage were, with other securities, assigned to

Messrs. Libby, as collateral security for the payments which Robert Rennie, by the agreement, agreed to make. Those payments ran through a considerable period of time: $2,000 were to be paid at the date of the agreement, August 25th, 1873, with interest from the 1st of that month; $1,000 in thirty days from August 15th, 1873, with interest; $1,000 in sixty days from that date, with interest; $1,000 in ninety days from August 25th, in that year, with interest; $1,000 on the 15th of November, in the same year, with interest on the unpaid balance of the $30,000, to that date, from August 1st, 1873; and $1,000 on the 15th of each month thereafter, with the interest then accrued on the unpaid balance of the $30,000. Of the $30,000, only $11,702.57, without interest, were paid, and there is now due on the judgment a balance of about $60,000.

The default in the payment of the interest on the railroad bonds is fully proved. No interest has ever been paid on them. The complainants in the suit on the railroad mortgage are entitled to a decree of foreclosure and sale.

Robert Rennie insists that the default in the payment of interest on the railroad bonds does not entitle the complainants to maintain a suit for foreclosure, inasmuch as the mortgage does not provide that the principal shall become due on default in payment of interest. It is enough to say that, if the position were tenable, it would not be a defence available to him. The mortgagors set up no defence in the suit. He further insists that the complainants are not entitled to a decree of foreclosure and sale until the amount due from him to them, which he insists is only the balance of the $30,000 and interest, shall have been ascertained. It is quite clear, from the explicit language and provisions of the agreement, that, by reason of his non-compliance with the terms as to payment, he lost the advantage which otherwise would have been secured to him. Nor can the stipulation that, if he should fail to pay the $30,000 and interest as therein provided, he should lose the benefit of the agreement, on the part of the Libbies, to receive the lesser sum of $30,000 and

interest for the judgment and interest, be regarded as a forfeiture or in the nature of a penalty. By the agreement, he, in consideration of the stipulation just referred to, agreed to withdraw his appeal from the New York judgment, and to permit the entry of judgment forthwith in the pending suit in this state on that judgment. It does not appear, it may be remarked, that he had any substantial ground of appeal. But, however that may have been, he abandoned the appeal in consideration of the agreement, on the part of the plaintiffs in the judgment, to accept $30,000 and interest therefor, if paid according to the stipulations of the agreement. The agreement contained the stipulation, that, if he should fail to make any one of the payments making up the $30,000 and interest, for five days after the time fixed for such payment, he should be entitled to no deduction from the judgment, but should pay the entire amount thereof to the plaintiffs, and that they should, in that case, have the right to apply any payment or payments made by him on account of the $30,000, towards the payment of the judgment, and to hold and dispose of the securities for the payment of any balance due on the judgment. He has, under the circumstances, no equity against the complainants in the railroad foreclosure suit, arising from the agreement.

William Rennie, in his answer to the bill in the suit on his mortgage and in the cross-bill, alleges that Robert Rennie, the mortgagee, was, from the time of the execution of the mortgage, in possession of the mortgaged premises and received the rents and profits thereof. He also claims an equity to have the mortgaged railroad property and franchises sold before the premises mortgaged by him, in order that he may avail himself of his equity to have the rents and profits of the premises mortgaged by him applied in full to his mortgage as against Robert Rennie, if, as he apprehends, he cannot have the full advantage of such equity as against the Libbies. He denies any knowledge of the assignment of that mortgage to the Libbies, and it does not appear that he had any actual notice until the beginning of

the suit for foreclosure thereon.    He had constructive notice from the time (October 10th, 1873) when the assignment was recorded.    (*Rev. p. 708*).    The assignees took the assignment, subject to the equities existing in his favor at the time of the assignment against the mortgagee.    As against the latter, he was entitled to an account of the rents and profits and to have an application thereof to the mortgage debt and interest.    He is entitled to it, as against the Libbies, as to the rents and profits up to (but not since) the time of recording the assignment.

Though the bill in the suit against William Rennie prays a decree for deficiency against him, there was no ticket or notice stating that such relief was sought against him, served on him with the subpœna to answer.    Indeed, none is returned with the writ.    There cannot, therefore, be a decree for deficiency against him.    *Rule 38.*

It appears that the mortgaged premises in the railroad mortgage will probably not bring enough to pay the amount due the complainants in that suit.    It is, as before stated, about $60,000.    It is in evidence that their fair value is about $15,000, and that the fair value of the William Rennie property is about $6,000.    There is no reason to suppose that William Rennie's claim for rents and profits, as against Robert Rennie, can be protected by selling the railroad property first.    Should there appear to be any reason for so doing, it may be ordered without delaying the proceedings on execution.

There will be a decree in each of the foreclosure suits, in accordance with the conclusions above expressed.